```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA          :
                                  :
        - v. -                    :
                                  :    11 Cr. 1100 (AJP)
Jia Ping Chen                     :
     a/k/a "Jai Ping Chen"        :
                                  :
            Defendant.            :
                                  :
- - - - - - - - - - - - - - - - - x
```

**SENTENCING MEMORANDUM**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

JANIS ECHENBERG
Assistant United States Attorney
    -Of Counsel-



*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

August 6, 2012

**BY HAND DELIVERY AND ECF**

The Honorable Andrew J. Peck
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, New York  10007

> Re:  **United States v. Jia Ping Chen**,
>      **11 Cr. 1100 (AJP)**

Dear Judge Peck:

      The defendant in the above-captioned case is scheduled to be sentenced on August 8, 2012.  The Government submits this letter in advance of that sentencing and in response to the defendant's submission, dated August 6, 2012.  As set forth in the Presentence Investigation Report dated August 1, 2012 (the "PSR"), the Probation Office recommends a sentence of time served. (PSR at 17).  For the reasons set forth below, it is the Government's view that a sentence within the stipulated Guidelines range of 10 to 16 months' imprisonment (the "Stipulated Guidelines Range") is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

### BACKGROUND

#### The Relevant Legal Framework

      The manufacture, distribution, and use of pesticides is regulated by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), Title 7, United States Code ("U.S.C."), Sections 136, *et seq*.  Pursuant to FIFRA, it is unlawful to distribute or sell any pesticide that is not registered with the EPA.  7 U.S.C. §136j(a)(1)(A).  Registration requires, among other things, providing the EPA with a copy of the pesticide's label and formula, as well as the results of tests regarding toxicity, environmental impact, efficacy and shelf life, so the EPA can evaluate the pesticide's contents, determine appropriate uses, and, if the contents are particularly toxic or otherwise

The Honorable Andrew J. Peck
August 6, 2012
Page 2 of 7

dangerous, prohibit or limit use of the pesticide.  Registered pesticides are classified by the EPA as either general use or restricted use, meaning there are restrictions on how and when they can be used.  7 U.S.C. §136a(a).

Criminal penalties apply when a pesticide producer, distributer, or seller knowingly violates any provision of FIFRA. 7 U.S.C. § 136l(b)(1)(A) & (B). (PSR ¶¶ 8-10). Knowingly is defined in the caselaw as a general intent to do that action constituting the violation.  *United States v. Weintraub*, 273 F.3d 139, 147 (2d Cir. 2001) (in asbestos prosecution, the court held that the phrase 'knowingly violates' requires knowledge of facts and attendant circumstances that comprise a violation of the statute, not specific knowledge that one's conduct is illegal); *United States v. Corbin Farm Service*, 444 F.Supp 510, 519 (E.D. Cal. 1978) (interpreting FIFRA, and noting that Congress used "knowingly" as it had in other *malum prohibitum* crimes, court held word "knowingly" reflected a general, not specific intent -- defendants knew they were dealing with a pesticide when they sprayed a field.)

## The Relevant Pesticides

Bromadiolone is a restricted use pesticide typically used in rat poison.  Per EPA regulations, a pesticide product may contain no more than 0.005% of bromadiolone as the active ingredient. Because bromadiolone is so toxic (ingestion by a small child could be fatal), the EPA requires that pesticides containing bromadiolone: (i) be applied by licensed professionals, who must use personal protective gear and special handling equipment; (ii) not be used in urban areas; (iii) not be sold in consumer size, defined as less than one pound; and (iv) be placed in tamper-proof baits. (PSR ¶ 11).

Fipronil is a general use pesticide registered for use to control cockroaches, among other insects, in a variety of residential and agricultural uses.  Registered residential uses for firpronil products include spot-on treatment and ant mound treatment.  Fipronil is also registered for certain outdoor treatments, including to treat golf courses and restaurants.  Per EPA regulations, a pesticide product for killing cockroaches may contain between 0.01% and 0.05% of fipronil as the active ingredient. (PSR ¶ 13).  The packages of cockroach bait at issue in this case contained .244% of fipronil, nearly five times the authorized amount.

The Honorable Andrew J. Peck
August 6, 2012
Page 3 of 7

## The Investigation, Arrest and Charges

The charges against the defendant arose from a multi-agency investigation, in partnership with the Manhattan District Attorney's office, the Environmental Protection Agency's Criminal Investigation Division ("EPA-CID"), the Department of Homeland Security and the New York State Department of Environmental Conservation ("DEC"), to stop the sale of illegal, improperly labeled, highly toxic pesticides manufactured abroad and sold in New York.  In or around December 2010, a 24-year-old woman was hospitalized (and nearly died) after ingesting an illegal, unregistered rat poison called "The Cat Be Unemployed," that she bought at the East Broadway Mall in Chinatown, and had mistaken for cough medicine. (PSR ¶ 14).  Later analysis of "The Cat Be Unemployed" revealed that the product contained the active ingredient brodifacoum – a pesticide similar in content and use restrictions to bromadiolone.

Beginning in May 2011, and continuing through August 2011, several undercover agents visited multiple locations in and around the East Broadway Mall, in an attempt to buy illegal pesticides.  The agents made successful purchases from eleven locations, and identified one supplier of pesticides, the defendant, who supplied to Huang's Grocery Store, located in Chinatown, as well as at least one vendor in the East Broadway Mall.  (PSR ¶ 16-24).  On two separate occasions, July 13, 2011 and August 31, 2011, undercover agents observed the defendant delivering pesticides – packages of rat poison, containing bromadiolone, and cockroach bait, containing fipronil – with labeling primarily in Chinese, that were not approved for sale by the EPA. (PSR ¶ 19-24).

As a result of the broader investigation, on September 14, 2011, twelve people were arrested, two on federal charges (the defendant and the owner of Huang's Grocery Store – Cheng Yan Huang, charged in 12 Cr. 32 (GWG)), the remaining on state charges,[1] and 14 locations were searched by federal and

---

[1] The ten defendants charged in the state – all owners or workers at small stores or stalls in and around the East Broadway Mall - have all pleaded guilty, some as individuals and some through their businesses.  They were all sentenced to conditional discharges and ordered to pay restitution or fines ranging from $1,500 to $5,000.  Cheng Yan Huang is scheduled to be sentenced
(continued...)

The Honorable Andrew J. Peck
August 6, 2012
Page 4 of 7

state law enforcement agents, resulting in the seizure of over 6,000 packages of pesticides containing high levels of toxic chemicals that were not approved for commercial sale in the United States.  Also, as part of a coordinated citywide inspection of 47 businesses in various neighborhoods in Manhattan, Brooklyn, and Queens, EPA and DEC civil inspectors seized 350 additional unregistered pesticide products, of 16 different varieties, many with high levels of toxicity.

At the time of the defendant's arrest, his home and van were searched, pursuant to search warrants, and agents found another approximately 250 boxes each containing dozens of packages of cockroach bait and 3 boxes of rodenticide.  Although the defendant did attempt to assist the Government with its investigation subsequent to his arrest, by engaging in a recorded conversation with an alleged pesticide distributor and identifying warehouses where he claimed to have purchased or been offered to purchase pesticides, no distribution quantities of pesticides were found at any of the locations when they were later searched and no further prosecutions were pursued as a result of the information he provided.  Accordingly, despite his efforts, the defendant has not provided substantial assistance to the Government pursuant to Section 5K1.1 of the Sentencing Guidelines.

After the defendant waived indictment, on December 22, 2011, a two-count Information was filed (the "Information"). (PSR ¶ 1). Count One of the Information charged the defendant with distributing at least 2,500 packages of cockroach bait containing fipronil that was not registered with EPA or authorized for distribution or sale by the EPA, in violation of Title 7, United States Code, Sections 136l(b)(1)(B) and 136j(a)(1)(A).  (PSR ¶ 2).  Count Two of the Information charged the defendant with distributing at least 2,000 packages of cockroach bait containing fipronil and at least 10 packages of a rodenticide containing restricted use bromadiolone, neither of which were registered with EPA or authorized for distribution or sale by the EPA, in violation of Title 7, United States Code, Sections 136l(b)(1)(B) and 136j(a)(1)(A).  (PSR ¶ 3).

---

[1](...continued)
before The Honorable Gabriel W. Gorenstein on August 14, 2012.

The Honorable Andrew J. Peck
August 6, 2012
Page 5 of 7

On February 3, 2012, the defendant pled guilty to the Information pursuant to a plea agreement (PSR ¶ 4).[2]  Under the terms of his plea agreement with the Government, the defendant stipulated that: (1) his total offense level was 12, based on the charged conduct and a six-point enhancement as a result of the danger to the community, with a downward adjustment for acceptance of responsibility; (2) his Criminal History Category was I, based on zero criminal history points; and (3) the applicable Sentencing Guidelines range was 10 to 16 months' imprisonment.  (Id.).  The defendant further agreed to provide payment of $1,200 to the DEC to pay for the cost of disposal of the unregistered and unauthorized pesticides sold by him and seized from his home. (Id.).

## DISCUSSION

The Government respectfully requests that this Court impose a sentence within the Stipulated Guidelines Range of 10 to 16 months' incarceration, in light of the conduct at issue, the danger posed to the community, and the need to provide specific and general deterrence.  Such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**The Nature, Circumstances, and Seriousness of the Offense.**  According to the American Association of Poison Control Centers's 2009 Annual Report, poison control centers receive between 12,000 and 15,000 reports each year of children under the age of six being exposed to rodenticides. Over 80% of these calls are related to children ages two years of age or younger.  As set forth above, a small child's exposure to bromadiolone could be fatal, and, therefore, without the proper labeling or instructions for use, the sale of rodenticide containing bromadiolone is especially dangerous.

Over the course of several months, the defendant distributed thousands of packages of pesticides that were not approved for distribution to the public and were not labeled in a way to give appropriate warnings about their danger. The cockroach bait contained nearly five times the percentage of

---

[2]     At the time of the guilty plea, a Superseding Information was filed which corrected the spelling of the defendant's name but was substantively identical to the original Information.

The Honorable Andrew J. Peck
August 6, 2012
Page 6 of 7

fipronil authorized by the EPA.  The rodenticide contained bromadiolone, for which the EPA has very specific application regulations including it not be applied in urban areas or distributed in consumer sizes and that it be applied only by licensed professionals using personal protective gear and special handling equipment. Instead, the defendant was selling to a grocery store who was in turn selling it directly to the public for use in their New York City apartments.

   Congress and federal courts have deemed this activity serious enough to make it a general intent crime, while at the same time limiting the incarceratory sentence for each count to one year.  The defendant's function - distributing the pesticides to business's like Huang's Grocery Store - allowed for these items to be available to the general public without any warnings or education about safe application of the pesticide. Accordingly, a sentence within the Stipulated Guidelines Range of 10 to 16 months' incarceration would reflect the "nature and circumstances" of the crime and the "seriousness of the offense" 18 U.S.C. §§ 3553(a)(1), (a)(2)(A).

   **Respect for the Law, Adequate Deterrence, and Protection of the Public.**  A term of imprisonment within the Stipulated Guidelines Range would also promote respect for the law, protect and educate the public, and provide both specific deterrence to the defendant and general deterrence to others. Specifically, as set forth above, the investigation revealed that these products were being sold widely in Chinatown and elsewhere, in violation of the law, and without proper warning labels.  A prosecution such as this is intended, in part, to educate the public and potential sellers of such items so that dangerous unregistered pesticides are not sold to an unknowing public.

The Honorable Andrew J. Peck
August 6, 2012
Page 7 of 7


**CONCLUSION**

       For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Guidelines Range of 10 to 16 months' incarceration, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

                                          Respectfully submitted,

                                          PREET BHARARA
                                          United States Attorney
                                          Southern District of New York

                                 By:  */s/ Janis Echenberg*
                                          JANIS ECHENBERG
                                          Assistant United States Attorney
                                          (212) 637-2597


Cc:   Joel Cohen, Esq. (by ECF and electronic mail)
       Counsel for Jia Ping Chen